**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON PRICE,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**ARMY REVIEW BOARD AGENCY**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 2:24-cv-01561-MJH** |

**OPINION**

Pending before the Court is an action brought by Plaintiff, Brandon Price, proceeding *pro se*, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, against Defendant, the Army Review Board Agency ("ARBA" or "the Board"). Plaintiff seeks judicial review of the Army Discharge Review Board's ("ADRB") decision not to upgrade his military discharge characterization from "Bad Conduct" to "Honorable." The ADRB is a constituent board of the Defendant, ARBA. Plaintiff contends that the ADRB's decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. Plaintiff asks this Court to set aside the ADRB's decision and remand to the ADRB with a recommendation that Plaintiff's discharge be upgraded to Honorable.

The parties filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The matter is now ripe for decision. Having considered the parties' respective motions and briefs (ECF Nos. 33, 34, 39, 40, 43, and 44), and for the following reasons, the Court will grant Plaintiff's motion for summary judgment in part and deny

it in part. Defendant's motion for summary judgment will be denied. The case will be remanded to the ADRB for further proceedings consistent with this opinion.

## I. Background

All material facts set forth below are undisputed unless otherwise indicated. Both parties stipulated that no traditional fact discovery was necessary in this case, and that the case should be decided on the administrative record created by the ADRB. (ECF No. 31, at ¶¶ 2(a)–(e)). All factual determinations relied upon by this Court were made by the ADRB or are otherwise reflected in the administrative record. (ECF No. 42-1). Where the parties disagree about a fact, or engage in argument about an alleged fact on which the ADRB did not make a clear determination, the Court will cite to specific evidence of record to support the fact.

### A. Plaintiff's Military Service

On January 19, 2010, Plaintiff began his military service in the United States Army. (ECF No. 42-1, at 84, 113). Plaintiff served two years and eighteen days. (*Id.* at 18). One year, eleven months, and twenty-nine days of that time was "Lost Time"—a consequence of Plaintiff being "Absent Without Leave" ("AWOL") and a deserter. (*Id.*).

On May 25, 2010, after completing basic training and infantry training, Plaintiff was assigned to Fort Polk, Louisiana. (*Id.* at 113). On or about June 18, 2010, Plaintiff witnessed an explosion that caused him tinnitus and mild to moderate hearing loss. (*Id.* at 22, 28–29). Plaintiff contends that the explosion made him medically unfit to serve. (*Id.* at 34). He also contends the explosion was the root cause of significant mental health injuries, including major depressive disorder ("MDD") and post-traumatic stress disorder ("PTSD"). (*Id.* at 26). Plaintiff claims both of these conditions affected his ability to process information and make sound decisions. (*Id.*).

**B. Plaintiff's Absence and Desertion**

Plaintiff was granted four days of leave over the weekend of July 4, 2010. (ECF No. 42-1, at 282 ¶ 3). Plaintiff claims he used the weekend to seek medical help for his mental health conditions outside Fort Polk. (*Id*. at 36). At some point during his leave, Plaintiff traveled to Pittsburgh, Pennsylvania, his hometown. (*Id*. at 218). Plaintiff claims that, during his attempt to return to the base, he was denied reentry due to his lack of proper identification. (*Id*. at 36). Plaintiff did not return to Fort Polk at the end of his four-day leave. (*Id.* at 219). As a consequence, on July 8, 2010, Plaintiff's duty status was changed to "Absent Without Leave." (*Id.* at 93, 98). On August 6, 2010, his status was changed from AWOL to "Dropped from the Rolls," as Plaintiff still had not returned to his base. (*Id*. at 93). At that time, Plaintiff was labeled a deserter wanted by the armed forces. (*Id*. at 92–97, 99).

The United States Army attempted to locate Plaintiff. (ECF No. 42-1, at 92–93, 97–98). The Army completed and filed DD Form 553 (Deserter/Absentee Wanted by the Armed Forces) to assist law enforcement in the identification and return of Plaintiff. (*Id*. at 97–98). The Army also sent two letters to Plaintiff's mother, one on July 18, 2010, and one on August 6, 2010, asking her to help locate Plaintiff and facilitate his return. (*Id*. at 92–93). These efforts proved unsuccessful. By Plaintiff's own admission, he never intended to return to the United States Army, and there were no extenuating circumstances preventing him from returning to military service during his desertion. (*Id.* at 225, 283).

**C. Plaintiff's Apprehension and Court Martial**

On March 2, 2012, Plaintiff was apprehended by civilian law enforcement in Pittsburgh on charges unrelated to his desertion. (*Id.* at 282). He was detained by police for eighteen days

until March 19, 2012. (*Id.* at 282). On that date, Plaintiff was returned to Fort Polk. (*Id*. at 283). Upon Plaintiff's return to military control, he was instructed that he was not to leave Fort Polk. (*Id*.).

The conditions Plaintiff was subjected to upon his return to Fort Polk are not entirely clear. Plaintiff claims that upon his return he was confined to his barracks, prevented from using a cell phone or any other communication device, and prevented from hiring outside counsel. (ECF No. 42-1, at 36). Defendant admits Plaintiff's movement was restricted to some degree upon his return, but denies he was confined to his barracks. (ECF No. 41, at 2). Plaintiff's court martial record only states that Plaintiff was not given new name badges for his uniform, resulting in him being "kicked out of the [dining facility] a few times" and "constantly questioned about the nametapes when he was outside [his] company area." (ECF No. 41-2, at 208–209). The ADRB found that Plaintiff "did not provide evidence of being confined to the barracks"; however, it did not make any further findings regarding Plaintiff's alleged confinement or its conditions. (*Id*. at 19).

On May 30, 2012, Plaintiff appeared before a military judge sitting as a special court martial. (ECF No. 42-1, at 141). Pursuant to Plaintiff's plea agreement, Plaintiff was convicted of absence without leave terminated by apprehension, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. (ECF No. 42-1, at 141, 237–38). Pursuant to the plea agreement, Plaintiff forfeited $994 pay per month for eight months, was sentenced to eight months' confinement, and was set to receive a Bad Conduct discharge upon completion of his confinement. (*Id.* at 10, 126). In addition, the military judge ordered confinement credit, reducing Plaintiff's sentence by 33 days: 18 days for the time he was detained by police, and 15 days of "Article 13 credit." (*Id.* at 174). The "Article 13 credit" was awarded based on Plaintiff's

treatment following his return to Fort Polk. (*Id.* at 270). This credit originated from an agreement between prosecution and defense counsel that was separate from Plaintiff's plea. (*Id.* at 208, 290). Following his conviction, Plaintiff was assigned to the Midwest Joint Regional Confinement Facility at Fort Leavenworth, Kansas, to serve his sentence. (*Id.* at 119). At the conclusion of his sentence, on January 24, 2014, Plaintiff was discharged from the Army. (*Id.* at 136). The characterization of Plaintiff's discharge was "Bad Conduct." (*Id.*).

**D. Plaintiff's Application for Record Correction**

On June 2, 2022, Plaintiff applied to the ADRB to request that his court martial charges be dismissed and that his discharge be upgraded to an Honorable characterization. (ECF No. 42-1, at 9, 26). Plaintiff's application largely focused on his pretrial confinement and the circumstances leading up to Plaintiff's trial. Plaintiff argues that proper confinement procedures were not followed in his case. (ECF No. 42-1, at 25). Specifically, he claims that DD Form 2707-1, a confinement order form, was either not filed or improperly completed in his case. (*Id.*). Plaintiff also claims that any decision to confine an accused service member must be conducted within 48 to 72 hours of the beginning of confinement. (*Id.*). Plaintiff states that this did not happen in his case, "raising serious questions about the lawfulness of [Plaintiff's] confinement." (*Id*. at 25).

In his application, Plaintiff alleges that he suffered 33 days of confinement leading up to his trial. (ECF No. 42-1, at 36–38). He claims that during this confinement he was restricted to his barracks. (*Id.* at 36). He alleges he was "denied everything but food, and water." (*Id.* at 38). This includes access to the outside world, as he alleges he was not given any form of communication device and was not permitted to hire non-military counsel. (*Id.* at 36, 38). He further alleges that he was treated unfairly and harassed. (*Id*. at 38). All of this, according to

Plaintiff, was done intentionally. (*Id*. at 38). Plaintiff claims the procedural errors and conditions of his confinement resulted in "significant deterioration in [Plaintiff's] mental health", "a substantial impact on the fairness of [Plaintiff's] trial", and "material[] prejudice [to] the substantial rights of the [Plaintiff]." (*Id.* at 25–26).

In support of these claims, Plaintiff relies upon a document contained within his court martial record. (ECF No. 42-1, at 280). Plaintiff highlights the last sentence of the document, which reads: "The accused will be credited with 33 days of confinement against the sentence to confinement."[1] (*Id*. at 38). Plaintiff concluded from this sentence that Brigadier General Clarence K.K. Chinn, the commanding officer who signed off on Plaintiff's sentence, "did not know of [Plaintiff's] pre-trial confinement before the court martial." (*Id*.).

Plaintiff also argues that his PTSD, MDD, and the hearing damage that resulted from the June 18, 2010, explosion are mitigating factors that should have been considered during his confinement and trial. (ECF No. 42-1, at 26). He argues that those conditions significantly affected his ability to process information and make sound decisions. (*Id*.).

In support of this contention, Plaintiff submitted a letter signed by Dr. Alan Reis, a licensed psychiatrist, stating that Plaintiff was diagnosed with PTSD. (ECF No. 42-1, at 43). The letter is dated October 25, 2023. (*Id*.). Plaintiff also submitted VA Health Care Service "Problem Lists" showing Plaintiff had two separate episodes stemming from MDD. (*Id*. at 44). The dates of those episodes are not provided, only the dates when the reports were entered into the VA's system. (*Id.*). Those dates are May 10, 2013, and May 16, 2013, respectively. (*Id*.). The medical provider listed for those entries is Dr. Arthur I. Timbus, another licensed psychiatrist. The VA

[1] In his application to the ADRB, Plaintiff used a blue highlighter to emphasize this sentence. He also calls it, "the only evidence Plaintiff could find" of his mistreatment.

Problem List also shows that Plaintiff experienced an "unspecified psychosocial circumstance" at some point. (*Id.*). No date for that circumstance is provided.

**E. The ADRB's Decision and Report**

The ADRB received Plaintiff's application on June 7, 2022. (ECF No. 42-1, at 9). On April 1, 2025, the ADRB finished its "Case Report and Directive" pertaining to Plaintiff's application. (*Id*. at 9–24). On May 2, 2025, the ADRB issued Plaintiff a "Decision Memorandum" denying Plaintiff's application. (*Id*. at 7). The Memorandum informed Plaintiff he could reapply to the ADRB for a personal appearance hearing or apply to have the Army Board for Correction of Military Records ("ABCMR") change his military records. (*Id.*).

The April 1, 2025, Case Report summarized and responded to the contentions in Plaintiff's application. The Report found that "despite applying liberal consideration of all evidence before the Board, the Board determined the discharge was proper and equitable. The [Plaintiff]'s misconduct fell below that level of meritorious service warranted for an upgrade to Honorable discharge." (ECF No. 42-1, at 23). The Board also refused to change Plaintiff's reason for discharge or his accompanying military separation code. (*Id.*).

**F. Procedural Background**

On November 14, 2024, Plaintiff commenced this action, requesting that the Court direct the ARBA to expedite Mr. Price's then-pending application. Compl. ECF No. 6, at 4. In the interim, the ADRB issued its April 1, 2025 "Case Report and Directive" followed by its' May 2, 2025 Decision Memorandum. As a result, on May 22, 2025, Plaintiff filed an Amended Complaint seeking judicial review of the ADRB's May 2, 2025 decision. Am. Compl., ECF No. 11. Plaintiff requests that this Court declare the ADRB's May 2, 2025 decision, arbitrary and

capricious, vacate the decision, and remand with a recommendation that the ADRB change Plaintiff's discharge designation to Honorable. (ECF No. 11, at ¶¶ (6)(a)(i)–(ii)).

Plaintiff has moved for summary judgment. Plaintiff's motion repeats his requests that this Court set aside the ADRB's May 2, 2025, decision as arbitrary and capricious, and asks this Court to remand the case to the ADRB with instructions to properly apply liberal consideration to Plaintiff's PTSD claims, recognize the Article 13 violation Plaintiff suffered, and issue a recommendation for an Honorable discharge. (ECF No. 33, at 4). Defendant has cross-moved for summary judgment. Defendant's motion asks this Court to uphold the ADRB's decision. (ECF No. 40, at 17). In the alternative, Defendant asks this Court to stay the case or dismiss it without prejudice, so that Plaintiff may reapply for a personal appearance before the ADRB, or appeal the ADRB's decision to the ABCMR. (*Id.*).

## II. Summary Judgment Standard Under the APA

Normally, summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, in cases where the parties are seeking judicial review under the APA, "the usual summary judgment standard does not apply." *Uddin v. Mayorkas*, 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012) (quoting *UPMC Mercy v. Sebelius*, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)). In this context, "a motion for summary judgment is simply a vehicle to tee up a case for judicial review." *Boston Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016). This is because in an administrative law context "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "[I]t is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record." *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007). It is "the function of the district

court . . . to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*.

The authority for reviewing the ADRB's actions rests in the APA. The United States Army is an "agency" within the meaning of the APA. *Jaffee v. U.S.*, 592 F.2d 712, 719 (3d Cir. 1979). As such, judicial review of the ADRB's decision not to change Plaintiff's military records is provided for by federal law. 5 U.S.C. § 702; *see also Neal v. Secretary of Navy and Commandant of Marine Corps*, 639 F.2d 1029, 1037 (3d Cir. 1981) (explaining that district courts "have both the power and the duty to review the actions" of military boards).

This Court may only set aside the ADRB's decision if it is "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with the law." *Fischer v. U.S.*, 402 F.3d 1167, 1180 (Fed. Cir. 2005);[2] 5 U.S.C. § 706(2)(A), (E). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). Additionally, although this Court must ensure that the agency has articulated "'a rational connection between the facts found and the choice made,' an agency explanation of 'less than ideal clarity' should not be invalidated if 'the agency's path may be reasonably discerned.'" *Zodiac Pool Sys. LLC v. United States DOE,* No. 23-3094, 2025 U.S. App. LEXIS 2012 (3d Cir. Jan. 29, 2025) (citations omitted).

While district courts should uphold military board decisions when they find substantial evidence supports them, *Green v. Westphal*, 94 Fed. Appx. 902, 904 (3d Cir. 2004), a district

[2] The *Fischer* Court succinctly combined subsections (A) and (E) of 5 U.S.C. § 706(2). The United States Supreme Court has formerly done the same. *See* Chappell *v. Wallace*, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence.").

court can only affirm a decision "upon the validity of the grounds upon which the [agency] itself based its action." *Sec. and Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943). Those reasons are garnered by a review of the administrative record, and the order may only be judged upon grounds "which the record discloses." *Id.* at 87. Not only that, "[i]f an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment." *Id*. at 88.

## III. Discussion

The Court first addresses Plaintiff's arguments challenging the Board's consideration of his pretrial confinement and treatment. Next, Plaintiff's arguments concerning how the Board considered his medical evidence are discussed. Finally, the Court addresses Defendant's alternative arguments requesting a stay or dismissal without prejudice.

### A. Plaintiff's Arguments Regarding Pretrial Confinement

In the ADRB's Case Report, the ADRB summarized Plaintiff's contentions regarding his pretrial confinement, identified as "g." and "h.", as follows:

> **g**. The applicant contends, the applicant was confined to their barracks and does not recall or have any evidence of their commanding officer approving pretrial confinement which makes the confinement illegal. The military justice system requires a review of confinement for an accused be conducted within 48 to 72 hours. The applicant was confined a week after returning to post which was over 72 hours. Specifically, the necessary DD Form 2707-1 (DD Form 2707 (Confinement Order)), which is required to justify and document the reasons for confinement, was either not filed or improperly completed. This failure violated the procedures outlined in R.C.M. 305, which governs the administration of pre-trial confinement in the military justice system. The presiding judge for the applicant's case was unaware of their 33 day confinement, once discovered, the applicant was credited with 33 days. The applicant did not have an Article 32 preliminary hearing which would have helped the applicant's case.

> **h**. The applicant contends, procedural errors and lack of adherence to proper confinement orders constitute a direct violation of the applicant's rights under R.C.M. 305(k), which states that improper pre-trial confinement procedures may warrant remedies such as confinement credit or dismissal of charges. Additionally, the denial of basic privileges and failure to provide proper oversight reflect unfair pre-trial punishment, prohibited by Article 13, UCMJ. The totality of these errors supports a finding that the applicant's treatment was inequitable and unjust. And also, DA Form 3881 (Rights Warning Procedure/Waiver Certificate) was not completed before the applicant's questioning, another major violation.

(ECF No. 42-1, at 19–20). After considering the evidence presented by Plaintiff and contained within Plaintiff's Army Military Human Resource Record ("AMHRR"), the ADRB concluded there was "insufficient evidence . . . to show that the command acted in an arbitrary or capricious manner, other than [Plaintiff]'s contention[s]." (*Id*. at 22). The ADRB's report found that Plaintiff "did not provide evidence of being confined to the barracks." (*Id.* at 20). The ADRB's report also acknowledged that Plaintiff "was credited with 33 days of confinement towards the sentence to confinement." (*Id*. at 20).

Plaintiff argues that the ADRB's report contains a self-contradiction because it acknowledges the 33-day credit Plaintiff received for his unlawful confinement, and yet finds "insufficient evidence" regarding such confinement. (ECF No. 34, at ¶ II). Plaintiff also argues that his Bad Conduct discharge "flowed from tainted proceedings", that "the ADRB minimized one of the most serious due process violations recognized in the UCMJ", and that the ADRB "cannot lawfully deny relief while ignoring that a military judge already found unlawful punishment." (*Id.* at ¶ III). Defendant argues that Plaintiff already received a remedy for any unlawful confinement, and that the ADRB was under no obligation to award another remedy in the form of a discharge upgrade. (ECF No. 40, at 15).

The administrative record shows that Plaintiff was subjected to "some degree of punishment or penalty other than arrest or confinement" upon his return to Fort Polk. (ECF No. 42-1, at 290). However, the exact conditions Plaintiff was subjected to are contested, and the record is not clear on this point. Plaintiff claims that he was confined to his barracks, he was prevented from communicating with those outside the base, he was prevented from securing civilian counsel, and he was intentionally mistreated. Said claims are either contradicted by, or not supported by, the administrative record. By Plaintiff's own admission, the only evidence he had of this mistreatment was the sentence from Brigadier General Chinn, approving Plaintiff's Article 13 credit. (*Id.* at 38). That sentence does not support Plaintiff's claims regarding the conditions of his pretrial confinement, or the inference that the General did not know of Plaintiff's pretrial confinement. No other evidence in the administrative record substantiates Plaintiff's allegations regarding his conditions and treatment after he returning to base.

Plaintiff's court martial record also contradicts and weighs against his claims. The Article 13 credit Plaintiff received was the result of an agreement between his counsel and the prosecution. (ECF No. 42-1, at 208, 290). The military judge merely approved that prearranged agreement; she did not *sua sponte* award Article 13 credit for unlawful treatment. (*Id*. at 209). Furthermore, at the court martial, it was explained that the time credit was the result of military command failing to obtain nametapes for Plaintiff in a timely manner. (*Id.* at 208). This resulted in Plaintiff constantly being questioned about lacking his nametapes, and his being removed from Fort Polk's dining facility a few times. (*Id*. at 208–09). Not only does this weigh against Plaintiff's claims of unlawful treatment, it weighs against his allegation that he was confined to the barracks. If Plaintiff were confined to the barracks, he would not have been in the dining facility or outside his company area.

The court martial record also cautions against a finding that Plaintiff was denied access to civilian counsel. The record demonstrates that Plaintiff was informed of his right to civilian counsel, chose to be represented by military counsel, and expressed that he was satisfied with his counsel. (*Id.* at 201, 236).

Regarding Plaintiff's contention about his lack of an Article 32 preliminary hearing, Article 32 preliminary hearings are only required for general courts martial. 10 U.S.C. § 832. Plaintiff was discharged as the result of a special court martial. (ECF No. 42-1, at 10, 201). Plaintiff's contention that he was not given an Article 32 hearing was rightfully ignored by the ADRB.

Plaintiff's contention that "the necessary DD Form 2707-1 . . . was either not filed or improperly completed" appears to result from a misunderstanding. (ECF No. 42-1, at 19). Plaintiff likely confused DD Form 2707-1[3] with another Department of Defense form—DD Form 2707[4]. Plaintiff's argument relates to his pretrial confinement. Contention "g" of the ADRB's report summarizes several of Plaintiff's written contentions, submitted alongside his application. *Compare* ECF No. 42-1, at 19 with ECF No. 42-1, at 25 & 36. In the written contentions, Plaintiff claimed that, "[d]uring [his] *pre-trial confinement*, the procedural requirements mandated by military law were not followed . . . . Specifically, the necessary DD

[3] DD Form 2707-1 is titled, "Department of Defense Report of Result of Trial," and thus this form would not have been filed during any alleged physical confinement to barracks.

[4] DD Form 2707 is titled "Confinement Order," and 2707 allows the preparer to specify that the service member is being confined "Pre-Trial," and may be required when a service member is confined before their trial. *See* Army Regulation 27-10 ¶ 5-21(c). DD Form 2707 specifies that it is used in three "Type of Confinement" situations: "Pre-Trial," as the "Result of NJP," or as the "Result of Court Martial." DD Form 2707, lines 1.a.1.-c. ECF No. 42-1, at 126.

Form 2707-1 (Confinement Order) . . . was either not filed or improperly completed." (*Id.* at 25) (emphasis added).

Assuming Plaintiff meant that DD Form 2707 "was either not filed or improperly completed," this Court does not find any reason to disturb the ADRB's conclusion that there was "insufficient evidence in the applicant's AMHRR or applicant-provided evidence to show that the command acted in an arbitrary or capricious manner, other than the applicant's contention." (ECF No. 42-1, at 22). As previously stated, this Court has found no evidence (outside Plaintiff's contentions) that Plaintiff was physically confined to his barracks prior to trial. In the absence of further evidence, it cannot be said the ADRB's decision not to upgrade Plaintiff's discharge characterization, based on the lack of a pretrial DD Form 2707, was arbitrary or capricious.

If Plaintiff meant that procedural requirements were not followed because his AMHRR is devoid of any post-court martial DD Form 2707-1, his claim has some technical merit. His administrative record is devoid of any DD Form 2707-1, and such a form should have been filed following Plaintiff's court martial. Army Regulation 27-10 ¶ D-2(a). However, Plaintiff's AMHRR contains DD Form 2707, dated May 30, 2012—the date of Plaintiff's court martial—and that form appears to be doing the work of DD Form 2707-1. This lone procedural error, especially when an effort was clearly made to follow procedure, cannot be said to constitute substantial evidence that the military command acted in an arbitrary or capricious manner.

Even if Plaintiff's evidence or the AMHRR had established major procedural violations, which we do not find, Plaintiff's reliance upon R.C.M. 305(k) does not provide for the dismissal of charges. It appears that Plaintiff is actually referring to R.C.M. 305(l), which discusses remedies for unlawful confinement; however, R.C.M. 305(l) only permits administrative confinement credit as a remedy. That is exactly the remedy Plaintiff was granted in his case.

Plaintiff's pretrial confinement contentions "g" and "h" are either unsupported by the record or contradicted by the administrative record. This Court finds that the Board's conclusion, related to those contentions was not arbitrary and capricious, it was supported by substantial evidence, and it was not otherwise contrary to law. Although the Board did not explain its exact rationale concerning these issues, the "path" for the Board's finding "may be reasonably discerned" as demonstrated above. *Zodiac*, 2025 U.S. App. LEXIS 2012, at *9. As such, this Court will not disturb the ADRB's findings as regards Plaintiff's arguments about pretrial confinement and procedural violations.

**B. Plaintiff's Arguments Regarding his Medical Records and Medical Conditions**

**1. Consideration of Plaintiff's Medical Records and Conditions**

In the ADRB's Case Report, the ADRB separated Plaintiff's medical records and medical conditions claims into two different "contentions," identified as "e." and "i." The Board summarized Plaintiff's first contention as follows:

> **e**. The applicant contends, the applicant was diagnosed with tinnitus and sensorineural hearing loss on 18 June 2010 at Bayne-Jones Army Community Hospital, Fort Polk, LA due to a live fire incident during training which made the applicant medically unfit to serve. The applicant later developed major depression. The applicant decided to seek help for their condition outside the base. The applicant tried to get back on base and was denied access by the military police due to not having proper identification. When the applicant returned the applicant was charged with being AWOL. The administrative failures and procedural errors worsened the applicant's already fragile mental and physical health. The applicant's PTSD, MDD, and hearing damage which resulted from an explosive injury severely affected the applicant's ability to make decisions and communicate effectively. The lack of access to proper counsel, coupled with the psychological strain of being confined without procedural justification, caused significant deterioration in the applicant's mental health. This resulted in episodes of heightened anxiety, inability to concentrate, and a sense of hopelessness, further complicating the applicant's ability to participate in their own defense. Under Article 59, UCMJ, legal errors that materially prejudice the substantial rights of the accused warrant dismissal or reversal of charges.

(ECF No. 42-1, at 18). Regarding this contention, the ADRB found "insufficient evidence . . . to show that the command acted in an arbitrary or capricious manner, or did not provide the [Plaintiff] access to care. . . ." (*Id.* at 22).

The ADRB summarized Plaintiff's second contention as follows:

> **i.** The applicant contends, the applicant's hearing injury from an explosion during service played a significant role in the behavior and decisions leading to the applicant's situation. The associated PTSD, MDD, and hearing damage are documented conditions that affected their cognitive functioning and communication abilities. These medical conditions should have been taken into account during confinement and trial, as required by R.C.M. 706, which mandates mental health evaluations when mental fitness is in question. Failure to properly consider this evidence constitutes an additional procedural failure and a violation of rights.

(ECF No. 42-1, at 18). "The Board acknowledged this contention." (*Id*. at 22).

In addition to responding to Plaintiff's contentions, the Board's report states:

> a. As directed by the 2017 memo signed by A.M. Kurta, the board considered the following factors:
>
> (1) Did the applicant have a condition or experience that may excuse or mitigate the discharge? **No.** The Board's Medical Advisor reviewed DoD and VA medical records and found no mitigating [behavioral health] diagnoses on the applicant. The applicant provided no documents or testimony of a condition or experience, that, when applying liberal consideration, could have excused or mitigated a discharge.
>
> (2) Did the condition exist or experience occur during military service? **N/A**
>
> (3) Does the condition or experience actually excuse or mitigate the discharge? **N/A**
>
> (4) Does the condition or experience outweigh the discharge? **N/A**

(ECF No. 42-1, at 21). In coming to its conclusions, the ADRB acknowledged reviewing the medical records submitted by Plaintiff. (*Id*. at 13, 18, 20). As stated above, the ADRB also stated that it applied "liberal consideration" to Plaintiff's application. (*Id*. at 14, 21).

In challenging these conclusions by the ADRB, Plaintiff argues that the ADRB's decision is arbitrary and capricious because it is self-contradicting. (ECF No. 34, at ¶ I). Plaintiff argues that the ADRB cannot both acknowledge medical evidence submitted by Plaintiff while simultaneously finding that Plaintiff "provided no documents" demonstrating the existence of mitigating mental conditions. (*Id.*) *In Response,* Defendant argues that the Board's conclusion is not arbitrary and capricious, because it is supported by substantial evidence. (ECF No. 40, at 12). Defendant argues that Plaintiff's submission of medical evidence to the ADRB does not require the ADRB to find such conditions existed at the time of Plaintiff's misconduct and that they affected Plaintiff's behavior to such a degree that they mitigate or excuse Plaintiff's misconduct. (*Id.* at 13). Defendant argues the ADRB evaluated and weighed all the evidence before it and came to its decision. (*Id.* at 14).

Liberal consideration must be given to applications seeking to change the characterization of the applicant's discharge, based in whole or in part on post-traumatic stress disorder ("PTSD"). 10 U.S.C. § 1553(d)(3)(A)(ii); AR 15-180, ¶ 3-3(b). Generally, liberal consideration refers to a requirement that military correction boards liberally consider the claim that the servicemember's service-connected mental health condition affected the circumstances of their discharge. *Bee v. U.S.*, No. 24-2306, 2026 WL 2050176 (Fed. Cir. July 16, 2026). The Ninth Circuit has described liberal consideration as "a lenient evidentiary standard, that is not strict or literal." *Bussey v. Driscoll*, 131 F.4th 756, 763 (9th Cir. 2025). It "require[d] the [ADRB] to resolve doubts . . . in favor of the veteran." *Id.*[5]

[5] The action in *Bussey*, involved a denial by the ABCMR, not the ADRB. As such the claim was brought under 10 U.S.C. § 1552, not § 1553. However, the "liberal consideration" language used in both statutes has a shared origin in Department of Defense Memoranda used by both parties and the ADRB in this case. *See* Off. of the Sec'y of Def., *Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder* (Sept. 3, 2014) ("Hagel Memorandum");

The idea of liberal consideration originates with two Department of Defense (then the Department of Defense) Memoranda. On September 3, 2014, former Secretary of Defense Chuck Hagel issued a Memorandum providing guidance on discharge upgrade requests by veterans claiming previously unrecognized PTSD. Off. of the Sec'y of Def., *Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder* (Sept. 3, 2014) ("Hagel Memorandum"), (ECF No. 42-3). The Hagel Memorandum instructs military review boards to give "liberal consideration" to a later "finding that PTSD existed at the time of service." *Id*.

On August 25, 2017, then Acting Undersecretary of Defense Anthony M. Kurta issued a Memorandum providing clarifying guidance on what liberal consideration entails. Off. of the Under Sec'y of Def., *Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military Records* (Aug. 25, 2017) ("Kurta Memorandum"), (ECF No. 42-4). Liberal consideration includes the following concepts:

> a. Some circumstances require greater leniency and excusal from normal evidentiary burdens.
>
> b. It is unreasonable to expect the same level of proof for injustices committed years ago when . . . mental health conditions, such as PTSD . . . were far less understood than they are today.
>
> …
>
> d. Mental health conditions, including PTSD . . . impact veterans in many intimate ways, are often undiagnosed or diagnosed years afterwards, and are frequently unreported.
>
> e. Mental health conditions, including PTSD . . . inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected.
>
> …
>
> k. Liberal consideration does not mandate an upgrade. Relief may be appropriate, however, for minor misconduct commonly associated with

---

Off. of the Under Sec'y of Def., *Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military Records* (Aug. 25, 2017) ("Kurta Memorandum").

> mental health conditions, including PTSD . . . and some significant misconduct sufficiently justified or outweighed by the fact and circumstances.

*Id*. In addition, the Kurta Memorandum states that requests for discharge upgrades involve answering the following four questions:

1. Did the veteran have a condition or experience that may excuse or mitigate the discharge?
2. Did that condition exist/experience occur during military service?
3. Does that condition or experience actually excuse or mitigate the discharge?
4. Does that condition or experience outweigh the discharge?

*Id*. The Kurta Memorandum explains that "[t]he veteran's testimony alone, oral or written, may establish the existence of a condition or experience, that the condition or experiences existed during . . . military service, and that the condition or experience excuses or mitigates the discharge." *Id.* "Evidence that may reasonably support more than one diagnosis should be liberally considered as supporting a diagnosis, that could excuse or mitigate [the veteran's] discharge." *Id.* The Memorandum also makes clear that "[a]bsent clear evidence to the contrary, a diagnosis rendered by a licensed psychiatrist or psychologist is evidence [that a] veteran had a condition that may excuse or mitigate the discharge." *Id.*

As explained above, Plaintiff submitted medical evidence showing that he suffers from PTSD and MDD. (ECF No. 42-1, at 43–44). Plaintiff also offered written statements that he suffers from PTSD and MDD. (*Id*. at 25). In light of these records and Plaintiff's personal statements, the ADRB's finding, that Plaintiff "provided no documents or testimony of a condition or experience, that, when applying liberal consideration, could have excused or mitigated a discharge" is conclusory. Further, the Report lacks any discussion or analysis of the relevant medical evidence and Plaintiff's statements. Review of the record evidence is a

necessary step that may impact the Board's ultimate decision. Thus, the absence of analysis and explanation supports that the ADRB's decision is flawed.

Defendant correctly points out that the ADRB was required to determine whether any condition existed during Plaintiff's service, and whether that condition excuses or mitigates Plaintiff's discharge; however, because the Board found that there were no documents or testimony of a condition, the ADRB failed to fully evaluate and discuss the record in order to reach, and answer, the subsequent Kurta Memorandum question, 2, 3, and 4s. This Court must limit its review to the determinations and rationale provided by the agency. This Court cannot assume how the ADRB would answer said questions. As it stands, this Court must find that the ADRB's factual determination, based upon Plaintiff's medical evidence and statements, was reached without analysis of the record evidence and was arbitrary and capricious.

Because a material determination, on which the ADRB's opinion was founded, lacked discussion and analysis of the record evidence regarding Plaintiff's PTSD and MDD, the ADRB's opinion was arbitrary and capricious. Therefore, this Court must grant summary judgment for Plaintiff and remand this case for reconsideration to the ADRB. On remand, the ADRB should provide discussion and reasoning that consider the record evidence in light of the Kurta Memorandum, *supra*.

**2. Plaintiff's Remaining Arguments regarding Consideration of Medical Issues**

Plaintiff has two additional arguments that can be discussed jointly. First, Plaintiff argues that the ADRB's decision is contrary to the law, because the Board's report states that it applied the Kurta Memorandum's liberal consideration standard and yet failed to upgrade Plaintiff's discharge. (ECF No. 43, at 5). According to Plaintiff, the Kurta Memorandum requires a

discharge upgrade to an Honorable characterization when a nexus is reasonably indicated. (*Id*.). Defendant argues that the Board specifically states that it applied liberal consideration and the factors specified in the Kurta Memorandum. (ECF No. 44, at 1). Second, Plaintiff argues that under 10 U.S.C. § 1553(d)(3)(A)(ii), AR 635-200 ¶ 3-10, and Department of Defense Instruction ("DoDI") 1332.28 Enclosure 4, an Honorable discharge is mandated when: 1) a service-connected mental-health condition began during service; 2) the condition is documented or reasonably indicated; and 3) the misconduct may reasonably be attributed to the condition. (*Id*. at 6). Plaintiff argues that all three prongs are met in his case.

This Court has carefully reviewed those authorities cited by Plaintiff and cannot find any support for Plaintiff's arguments. This Court has likewise been unable to find any other source supporting Plaintiff's argument. For that reason, this Court finds Plaintiff's mandatory upgrade argument flawed, and Plaintiff's request to upgrade his discharge characterization unwarranted.

Finally, Plaintiff argues that the ADRB's decision was arbitrary and capricious, because it failed to consider that Plaintiff had no behavioral or disciplinary problems prior to the June 18, 2010, live-fire incident. (ECF No. 34, at ¶ V). Plaintiff argues that under AR 635-200, and Department of Defense policy, a service history such as his—coupled with his claimed mental health injury—warrants a discharge upgrade. (*Id*.). Defendant does not directly address Plaintiff's argument, but argues generally that the evidence submitted by Plaintiff in support of his contention does not constitute substantial evidence. (ECF No. 44, at 3–4).

This Court has not found anything within AR 635-200 to support Plaintiff's argument. However, both the Hagel and Kurta Memoranda offer some support to Plaintiff's position. The Hagel Memorandum states that liberal consideration will be given "when case records contain narratives that may support symptomatology at the time of service . . . ." (ECF No. 42-3, at 4).

The Kurta Memorandum states that "changes in behavior" may constitute evidence supporting the existence of a condition or that condition's existence at the time of service. (ECF No. 42-4, at 1). It also states that the veteran's testimony alone "may establish the existence of a condition or experience, [or] that the condition or experience existed during . . . military service." (*Id*. at 4).

In his application to the ADRB, Plaintiff pointed to his behavior before and after the June 18, 2010, explosion as affecting his ability to process information and make sound decisions. (ECF No. 42-1, at 26). It is unclear from the ADRB's report whether the Board considered changes in Plaintiff's behavior as grounds for upgrading Plaintiff's discharge characterization. The ADRB did acknowledge Plaintiff's contention "i," which included an allegation that Plaintiff's "hearing injury from an explosion during service played a significant role in the behavior and decisions leading to [Plaintiff]'s situation." (*Id*. at 22). Plaintiff put forth written statements supporting that his behavior changed following the June 18, 2010, incident. (*Id.* at 26). Finally, Plaintiff's AMHRR record does not indicate Plaintiff had any "behavioral issues or medical concerns" prior to the June 18, 2010, explosion. Plaintiff does have documented medical issues, and the narrative of a soldier without any issues suddenly going AWOL suggests a need for consideration. (*Id*. at 28–29, 43–44). The ADRB's decision did not provide supplemental analysis to support that such record evidence was considered in light of the standards to be applied.

This evidence, while not overwhelming, is sufficient to warrant explicit consideration by the ADRB in its report. Because it is beyond the purview of this Court to make factual findings in this case, on remand the ADRB decision should include sufficient analysis to support its conclusion as to whether Plaintiff's AMHRR or any Plaintiff-provided evidence supports any discharge upgrade or not.

**C. Defendant's Request to Allow Plaintiff to Pursue other Administrative Remedies**

Defendant requests that instead of granting summary judgment for Plaintiff, this Court should dismiss the case without prejudice or stay the case to allow Plaintiff to pursue other administrative remedies. (ECF No. 40, at 17). Plaintiff is wholly against Defendant's request. Plaintiff argues that administrative exhaustion is only required when Congress expressly demands it. (ECF No. 43, at 4). Plaintiff argues no such express mandate exists regarding this case. He argues that no further administrative remedies are mandatory in his case; and therefore, there is no reason to dismiss or stay Plaintiff's case (ECF No. 43, at 4).

Under the APA "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The Supreme Court has made clear that, pursuant to the APA, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993).

Despite Defendant's request, Defendant's Brief in Support of motion for summary judgment does not provide this Court with either statutory language or an agency rule that requires exhaustion of administrative remedies before filing suit. Section 1553 of United States Code Title 10 contains no such express requirement. The statutory language relating to additional administrative remedies reads as follows: "If a board . . . does not grant a request for an upgrade . . . that declination *may* be considered under section 1552 or 1553(a) of this title, as applicable." The statute's use of the permissive "may," instead of the mandatory "must," fails to convince this Court that additional administrative efforts are required. Most convincingly, Defendant concedes "that the ADRB's decision is a final agency action subject to judicial review

under the APA." (ECF No. 44, at 3). For those reasons, this Court finds that judicial review after a final decision from the ADRB is appropriate, and that dismissal or a stay order is unnecessary in this case.

## IV. Conclusion

Accordingly, Defendant's motion for summary judgment will be denied. Plaintiff's motion for summary judgment will be granted in part and denied in part. The portions of Plaintiff's motion for summary judgment, asking this Court to recognize the Article 13 violations committed against Plaintiff and issue a recommendation for an Honorable Discharge, will be denied. The portion of Plaintiff's motion for summary judgment seeking to vacate the ADRB's May 2, 2025 decision, will be granted, and this case will be remanded to the ADRB for further proceedings consistent with this Opinion.

A separate Order will be entered.

s/*Marilyn J. Horan*
Marilyn J. Horan
United States District Court Judge

Brandon Price, pro se
APT. 3
150 1st Street
Blawnox, PA 15238